[No. A066386. First Dist., Div. Three. June 23, 1995.]

JOHN ROBERT BALDWIN, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

1632

COUNSEL

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, William S. Clark and Gregory J. Rolen, Deputy Attorneys General, for Defendant and Appellant.

Mark D. Greenberg for Plaintiff and Respondent.

OPINION

CHIN, P. J.—The Department of Motor Vehicles (DMV) appeals from a judgment granting respondent John Robert Baldwin's petition for writ of mandamus, in which Baldwin sought to overturn the DMV's order revoking his driver's license. The DMV issued the order after receiving notice of Baldwin's third conviction for driving under the influence of alcohol. The judgment directs the DMV to vacate its order and to issue Baldwin a restricted license in accordance with the order of the criminal court where Baldwin suffered his most recent conviction. The DMV contends that the superior court misapplied the relevant statutes in granting the writ. We agree, and therefore reverse the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

By letter dated September 13, 1993, the DMV informed Baldwin that it was revoking his driver's license for three years, effective August 10, 1993.

The letter explained that the DMV was acting under Vehicle Code section 13352, subdivision (a)(5),[1] based on Baldwin's three drunk driving convictions under section 23152, subdivision (a), within seven years. For purposes of this mandamus proceeding, Baldwin does not contest the validity of any of these convictions, and concedes that he is "a *de facto* third offender . . . ."

Baldwin then filed a petition asking the superior court to issue a writ of mandamus directing the DMV to vacate its revocation order. In the petition, he alleged that he had been arraigned in municipal court on a charge of driving under the influence of alcohol (§ 23152, subd. (a)) with two prior convictions for that offense within seven years. He further alleged that the district attorney, with the municipal court's approval, struck one of the alleged prior convictions from the complaint because "he could not prove [it] to be true." Baldwin then pleaded guilty to the charge and admitted one prior conviction. The petition alleged that the municipal court later sentenced him "pursuant to . . . [s]ection 23165 and granted him probation and imposed terms of probation pursuant [to] . . . [section 23166, subdivision (b)], including an order that [his] driving privileges be restricted . . . ."

Based on these alleged facts, Baldwin asked the superior court to order the DMV to vacate the revocation order and to issue him a restricted license in accordance with the municipal court's sentence. In support of his request, Baldwin argued that, because the municipal court sentenced him as a second time offender and ordered restriction of his license as a condition of probation, section 23166, subdivision (b)(3), precluded the DMV from revoking his license under section 13352, subdivision (a)(5). The DMV opposed the petition, arguing that the municipal court's action did not alter the DMV's mandatory duty under section 13352, subdivision (a)(5), to revoke Baldwin's license upon receiving notice of his third conviction.

After hearing, the superior court granted the petition. It entered a judgment ordering issuance of a writ directing the DMV to vacate its revocation order and to issue Baldwin a restricted license "as ordered by" the municipal court. This timely appeal followed.

### Discussion

In general, the punishment that a criminal court may impose for a conviction of driving under the influence of alcohol in violation of section 23152 depends on how many other convictions the driver has for that same

---

[1]All further statutory references are to the Vehicle Code.

offense.[2] Section 23160 sets forth the punishments applicable to ". . . any person . . . convicted of a first violation of Section 23152 . . . ." Under section 23165, different punishments apply to a convicted drunk driver whose offense "occurred within seven years of a separate violation of Section . . . 23152 . . . which resulted in a conviction . . . ." Section 23170 sets forth still another set of punishments applicable to a convicted drunk driver whose current offense ". . . occurred within seven years of two separate violations of Section . . . 23152 . . . which resulted in convictions . . . ." Sections 23161, 23166, and 23171 respectively enumerate conditions that a criminal court must impose if it grants probation to persons "punished under" sections 23160, 23165, or 23170.

■ Section 13352 sets forth the DMV's duty to suspend or revoke the license of a driver who suffers a drunk driving conviction. It directs the DMV ". . . immediately [to] suspend or revoke, or record the court-administered suspension or revocation of, the privilege of any person to operate a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of a violation of Section 23152 . . . ." (§ 13352, subd. (a).) By reference to the criminal sentencing statutes, section 13352, subdivision (a), conditions the length of the suspension or revocation on the number of other convictions the driver has. The provisions applicable to second and third time offenders, respectively subdivisions (a)(3) and (a)(5), are as follows: "(3) Except as provided in Section 13352.5, upon a conviction or finding of a violation of Section 23152 punishable under Section 23165, the privilege shall be suspended for 18 months . . ."; "(5) Upon a conviction or finding of a violation of Section 23152 punishable under Section 23170, the privilege shall be revoked for a period of three years. . . ." (§ 13352, subd. (a)(3), (a)(5).)

In *Pollack* v. *Department of Motor Vehicles* (1985) 38 Cal.3d 367 [211 Cal.Rptr. 748, 696 P.2d 141] (*Pollack*), the Supreme Court considered the relationship between the criminal sentencing provisions applicable to drunk driving convictions and the DMV's administrative duties under section 13352. In *Pollack*, the DMV had suspended Pollack's license under section 13352, subdivision (a)(3), upon his second conviction within seven years, notwithstanding that the prior conviction was "neither alleged nor proven in the second criminal proceeding." (*Pollack*, *supra*, 38 Cal.3d at p. 371.) Pollack argued that, because the prosecution in the criminal action failed to allege or prove the prior conviction, he was not " 'punishable under Section 23165' " as a second time offender within the meaning of section 13352,

---

[2]The court must also consider convictions for other related offenses, none of which is relevant on the facts of this case.

subdivision (a)(3), and the DMV could not treat him as such. (*Pollack*, *supra*, 38 Cal.3d at p. 373.) The court disagreed, finding ". . . that the 'punishable under' formulation was merely intended to provide a shorthand reference to drunk driving offenses, with and without prior convictions." (*Pollack*, *supra*, 38 Cal.3d at p. 375.) In reaching this conclusion, the court determined from relevant legislative history that, in enacting section 13352, subdivision (a)(3), the Legislature intended to protect the public from repeat offenders by having license revocation "follow administratively from the record of convictions." (*Pollack*, *supra*, 38 Cal.3d at p. 381, fn. omitted.) The court explained: "That concern would not be served by an interpretation of the statute which makes public protection dependent upon whether a prosecutor, in a criminal proceeding, chooses to plead and prove the prior offense." (*Ibid.*) Thus, despite its reference to offenses "punishable under Section 23165," section 13352, subdivision (a)(3), *requires* the DMV to suspend the license of a twice convicted drunk driver, even if the prior conviction is neither alleged nor proven in the criminal proceeding. (*Pollack*, *supra*, 38 Cal.3d at pp. 371, 377.)

*Vary v. Forrest* (1988) 201 Cal.App.3d 1506 [247 Cal.Rptr. 873] (*Vary*) further considers the relationship between criminal proceedings and the DMV's administrative duties. In *Vary*, the DMV had revoked Vary's license under section 13352, subdivision (a)(5), upon his third conviction. (*Vary*, *supra*, 201 Cal.App.3d at p. 1508.) Vary successfully argued in a criminal proceeding that the wording of the criminal statutes ". . . required he be sentenced under section 23165 which governs defendants with one prior conviction rather than under section 23170 which governs defendants with two prior convictions." (*Vary*, *supra*, 201 Cal.App.3d at pp. 1508-1509, fn. omitted.) He then challenged the DMV's revocation order, arguing that revocation under section 13352, subdivision (a)(5), was improper because he was not punishable as a third time offender under section 23170. (*Vary*, *supra*, 201 Cal.App.3d at pp. 1509-1510.) Applying *Pollack*, the court rejected Vary's argument that ". . . sentencing considerations or restrictions in the underlying criminal case are relevant to the [DMV's] duties to suspend or revoke under section 13352." (*Vary*, *supra*, 201 Cal.App.3d at p. 1513.) The court explained: "The [DMV's] duty . . . [under section 13352] is to suspend or revoke a license based on the fact of convictions, and not on how offenders can be, or are, sentenced in the criminal courts. We conclude section 13352's reference to section 23170 is nothing more than shorthand for the directive that if an offender is convicted of three violations of stated sections in a period of five years, his license will be revoked for a period of three years." (*Vary*, *supra*, 201 Cal.App.3d at p. 1513.)

We agree with the DMV that, under *Pollack* and *Vary*, the fact that the municipal court sentenced Baldwin in the criminal action as if he had only

one prior conviction does not alter the DMV's mandatory duty to treat him as a third time offender under section 13352, subdivision (a)(5). Despite the municipal court's action, Baldwin was "punishable under section 23170" within the meaning of section 13352, subdivision (a)(5), because he suffered three convictions under section 23152 within seven years. Therefore, the DMV acted properly in revoking his driving privilege for three years.

Baldwin concedes the general rule under *Pollack* and *Vary* that the DMV "has a mandatory obligation to act on the *fact* of the number of convictions, regardless of the disposition of the criminal proceedings." He further concedes that, if this rule applies in this case, then as "a *de facto* third offender, [he] had to have his license revoked under" subdivision (a)(5) of section 13352. However, he contends that the municipal court's imposition of probation under section 23166 renders the general rule inapplicable. That section provides in relevant part: "If the court grants probation to any person punished under Section 23165, . . . the court shall impose as conditions of probation that the person be subject to either subdivision (a) or (b), as follows: [¶] . . . [¶] (b) All of the following: [¶] . . . [¶] (3) If the person gives proof of financial responsibility . . . to the [DMV], have the privilege to operate a motor vehicle be restricted by the [DMV] pursuant to [s]ection 13352.5 . . . . [¶] Except as is specified in subparagraph (B) of paragraph (4), if the person gives proof of financial responsibility to the [DMV], the [DMV] shall not suspend the person's privilege to operate a motor vehicle under Section 13352, as provided in Section 13352.5 . . . ." Baldwin asserts that this section creates ". . . an express exception to the mandatory suspension and revocation provisions of Section 13352 . . . ," that it applies in this case because the municipal court *"punished* [him] under [section] 23165" by imposing probation and ordering restriction of his license, and that it prohibits the DMV from revoking his license. (Original italics.)

We reject Baldwin's contention because the language of the relevant statutes demonstrates that the suspension prohibition in section 23166, subdivision (b)(3), is inapplicable in this case. As set forth above, that subdivision provides that, upon the driver's proof of financial responsibility, the DMV "shall not *suspend* the person's privilege to operate a motor vehicle under Section 13352, *as provided in Section 13352.5* . . . ." (Italics added.) This subdivision's use of the term "suspend" and its reference to section 13352.5 are the keys to assessing Baldwin's argument. Section 13352.5, subdivision (a), provides in relevant part: "Unless ordered to do so by the court upon a finding that the terms and conditions of probation were violated, the [DMV] shall not *suspend, pursuant to paragraph (3) of subdivision (a) of Section 13352*, but shall restrict, the privilege of any person to

operate a motor vehicle upon a conviction or finding that the person violated Section 23152. . . ."[3] (Italics added.) Together, these two sections demonstrate that section 23166, subdivision (b)(3)'s prohibition applies *only* to the DMV's duty under section 13352, subdivision *(a)(3)*, to *suspend* the driving privilege of a person punishable as a second time offender under section 23165. However, *Pollack* and *Vary* establish that this case involves the DMV's duty under section 13352, subdivision *(a)(5)* to *revoke* Baldwin's driving privilege as a third time offender punishable under section 23170. As to this duty, sections 23166 and 13352.5 are silent. Accordingly, the municipal court's imposition of probation under section 23166 does not affect the DMV's duty to revoke Baldwin's license under section 13352, subdivision (a)(5).[4]

Relevant legislative history supports our conclusion that the Legislature did not intend to circumscribe the DMV's duty to revoke the license of a third time offender by enacting section 23166. Prior to 1981, section 13352.5 enabled a criminal court to prevent the DMV from revoking the license of a driver with three or more convictions by certifying that the driver was participating in an alcoholism treatment program. (*Pollack, supra*, 38 Cal.3d at pp. 378-379.) As part of its comprehensive reorganization of the Vehicle Code in 1981, ". . . the Legislature effected a significant change in this statute. Although the court could still prevent the suspension or revocation of driving privileges of *second* offenders, the provisions pertinent to third and subsequent offenders were deleted. (See former § 13352.5, Stats. 1981, ch. 940, § 6, p. 3564.) After 1981, revocation of driving privileges upon a third conviction of drunk driving within five years became mandatory in all cases.

---

[3]The rest of this subdivision explains that it applies only if the court certifies that it has granted probation and restricted the person's driving privilege pursuant to section 23166, subdivision (b), and the person provides the required proof of financial responsibility. (§ 13352.5, subd. (a).)

[4]In reaching this conclusion, we reject Baldwin's contention that the reference in section 23166, subdivision (b)(3), "only to the DMV's power to suspend a license" is simply an "ambiguity" and does not "evidence[] an intention to allow [the] DMV the power [to] override the restricted license by a revocation of the license of a *de facto* third offender." In making this assertion, Baldwin ignores the explicit reference in section 23166, subdivision (b)(3), to section 13352.5, and the latter section's explicit reference to the DMV's duty to suspend a person's driving privilege under section 13352, subdivision (a)(3). Moreover, section 23186, which the Legislature enacted at the same time as section 23166, demonstrates that the Legislature expressly considered the difference between suspension and revocation when it enacted section 23166. Section 23186 sets forth probation conditions that a court must impose on a person convicted of a second offense under section 23153. Section 23186, subdivision (b)(3), after providing for a one-year suspension followed by a two-year restriction, directs: "The [DMV] shall not *revoke* the person's privilege to operate a motor vehicle under Section 13352, as provided in Section 13352.5 . . . ." (Italics added.) The Legislature's use of different terms in these sections belies Baldwin's claim that section 23166's reference only to suspension is simply an ambiguity.

[¶] Thus, the 1981 amendment of section 13352.5 clearly expressed the Legislature's intent to deprive all third and subsequent offenders of their driving privileges."[5] (*Pollack, supra,* 38 Cal.3d at p. 379, fn. omitted, original italics.) This legislative history confirms our conclusion, based on the reference in section 23166 to suspension under section 13352.5 and the reference in section 13352.5 to suspension under section 13352, subdivision (a)(3), that section 23166 does not affect the DMV's duty under section 13352, subdivision (a)(5), to revoke the license of a third time offender. Accordingly, the superior court erred in granting Baldwin's petition.

■ Having determined that the statutes required the DMV to revoke Baldwin's license, we now turn to Baldwin's assertion that administrative revocation subsequent to imposition of criminal punishment violates the double jeopardy clause of the Fifth Amendment to the United States Constitution.[6] In making this argument, Baldwin principally relies on the United States Supreme Court's recent decision in *Montana Dept. of Rev.* v. *Kurth Ranch* (1994) __ U.S. __ [128 L.Ed.2d 767, 114 S.Ct. 1937] (*Kurth Ranch*). Baldwin argues that, under *Kurth Ranch,* the DMV's revocation of his license constitutes punishment within the meaning of the double jeopardy clause because "it is conditioned on the commission of the crime of drunk driving," and is "designed primarily for deterrence and to have some retributive effect." We disagree.[7]

The aspect of the double jeopardy clause on which Baldwin relies protects against "multiple punishments for the same offense. [Citation.]" (*United*

---

[5]The digests that the Legislative Counsel prepared for the bill that reorganized the Vehicle Code in 1981 as it progressed through the Legislature consistently indicate the Legislature's intent to require the DMV to revoke a driver's license upon a third conviction of driving under the influence. For example, the digest accompanying the Assembly amendments of March 23, 1981, states in part: "The bill would require the [DMV] to revoke the privilege for 5 years for a third or subsequent conviction of [driving under the influence of alcohol] not involving bodily injury or death to another . . . ." (Legis. Counsel's Dig., Assem. Bill No. 541 as amended in Assem. Mar. 23, 1981 (1981-1982 Reg. Sess.) p. 3.) The final version of the Legislative Counsel's Digest, which introduced the statutes as enacted, states in pertinent part: "The bill would require the [DMV] to suspend [the privilege to operate a motor vehicle] for 1 year for a second conviction of [driving under the influence of alcohol] and to revoke it for 3 years for a third or subsequent conviction. . . ." (Legis. Counsel's Dig., Assem. Bill No. 541, 4 Stats. 1981 (Reg. Sess.) Summary Dig., p. 286.) As *Pollack* explains in citing the same legislative materials, ". . . it is reasonable to presume that the Legislature acts, in amending statutes, with the intent and meaning expressed in the Legislative Counsel's Digest. [Citation.]" (*Pollack, supra,* 38 Cal.3d at pp. 376-377.)

[6]The double jeopardy clause ". . . and the standards developed in its application by the United States Supreme Court apply to the states through the due process clause of the Fourteenth Amendment [citation] . . ." to the United States Constitution. (*Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 601 [119 Cal.Rptr. 302, 531 P.2d 1086].)

[7]Although Baldwin did not raise this issue in the superior court, we address it as a matter of discretion. (See *Hale* v. *Morgan* (1978) 22 Cal.3d 388, 394 [149 Cal.Rptr. 375, 584 P.2d

*States* v. *Halper* (1989) 490 U.S. 435, 440 [104 L.Ed.2d 487, 496, 109 S.Ct. 1892] (*Halper*).)[8] In applying this protection, ". . . the labels 'criminal' and 'civil' are not of paramount importance. . . . [C]ivil proceedings may advance punitive as well as remedial goals, and, conversely, . . . both punitive and remedial goals may be served by criminal penalties. [Citation.]" (*Id.* at p. 447 [104 L.Ed.2d at p. 501], fn. omitted.) Thus, ". . . the legislature's description of a statute as civil does not foreclose the possibility that it has a punitive character." (*Kurth Ranch, supra,* __ U.S. at p. __ [128 L.Ed.2d at p. 777, 114 S.Ct. at p. 1945], fn. omitted.) Rather, the determination whether a given sanction "constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." (*Halper, supra,* 490 U.S. at p. 448 [104 L.Ed.2d at p. 501].) " '[A] defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.' [Citation.]" (*Kurth Ranch, supra,* __ U.S. at p. __ [128 L.Ed. 2d at p. 777, 114 S.Ct. at p. 1945], quoting *Halper*.)

Applying the principles that *Halper* announced, in *Ellis* v. *Pierce* (1991) 230 Cal.App.3d 1557, 1559 [282 Cal.Rptr. 93] (*Ellis*), Division Five of this appellate district rejected a double jeopardy challenge to the DMV's suspension of a license under the administrative per se scheme for the driver's refusal to take a blood-alcohol test (§ 13353). The driver argued that the suspension violated the double jeopardy clause because a criminal court already had enhanced his sentence for his refusal to take the test. (*Ellis, supra,* 230 Cal.App.3d at p. 1559.) In rejecting this argument, the court reasoned: ". . . the suspension statute cannot be fairly characterized as a deterrent or retribution . . . . Appellate courts have repeatedly described the goals of the statute as twofold: the immediate purpose is to obtain the best evidence of blood-alcohol content, and the long-range purpose is to reduce highway injuries by inhibiting intoxicated persons from driving. [Citations.] . . . [¶] Neither of these purposes is deterrent or retributive, and thus neither is punitive." (*Ellis, supra,* 230 Cal.App.3d at p. 1561.) Given its conclusion that the administrative sanction "does not constitute punishment," the court

---

512].) Notably, the DMV has responded to Baldwin's argument substantively, and does not assert that we should not consider it.

[8]The double jeopardy clause also protects against "a second prosecution for the same offense after acquittal" and "a second prosecution for the same offense after conviction . . . ." (*Halper, supra,* 490 U.S. at p. 440 [104 L.Ed.2d at p. 496].) Baldwin does not assert either of these protections.

held that "a license suspension after imposition of the . . . refusal enhancement does not violate the double jeopardy clause."[9] (*Id.* at p. 1562; see also *Fearn* v. *Zolin* (1992) 9 Cal.App.4th 1756, 1762-1763 [12 Cal.Rptr.2d 314] [rejecting the claim that suspension under administrative per se statutes violates due process by imposing both criminal and civil penalties for the same act or omission].)

Baldwin contends that *Ellis* is inapplicable to this case because of differences between administrative per se suspensions, which were at issue in *Ellis*, and suspensions (or revocations) under section 13352 based on convictions. He argues that suspensions under the administrative per se statutes establish "the procedure that primarily implements" the concern for public safety because such suspensions occur immediately upon arrest. "By contrast," Baldwin asserts, "suspension upon conviction applies only after the *criminal* process has taken its course, whether swiftly or slowly, leaving the public unprotected for the period of time between arrest and conviction." From these circumstances, Baldwin concludes that ". . . the presence of administrative per se proceedings [citation] casts severe doubt on whether suspension upon conviction is in fact designed solely and primarily for public protection as opposed to punishment."

We find Baldwin's argument unpersuasive. In *Pollack,* the Supreme Court declared that "[t]he thrust of the legislative concern under . . . section 13352," both before and after the 1981 reorganization of the Vehicle Code, is the "protection of the public from drivers whose prior conduct demonstrates they cannot currently be trusted with a license to drive."[10] (*Pollack, supra,* 38 Cal.3d at pp. 380-381.) Contrary to Baldwin, we do not find that the Legislature's enactment of the administrative per se statutes suggests that section 13352 serves a different purpose. On the contrary, that the Legislature acted to fill the gap section 13352's dependency upon convictions

---

[9]Courts around the country have reached a similar conclusion in rejecting double jeopardy attacks on suspensions and revocations under administrative per se statutes. (E.g., *Johnson* v. *State* (1993) 95 Md.App. 561 [622 A.2d 199, 202-205]; *State* v. *Strong* (1992) 158 Vt. 56 [605 A.2d 510, 511-514]; *State* v. *Nichols* (1991) 169 Ariz. 409 [819 P.2d 995, 998-999]; *Price* v. *Reed* (Okla. 1986) 725 P.2d 1254, 1257-1260.)

[10]See also *Fox* v. *Alexis* (1985) 38 Cal.3d 621, 632 [214 Cal.Rptr. 132, 699 P.2d 309] (dis. opn. of Lucas, J.) (statutes requiring suspension upon conviction "are intended to protect the public rather than to punish licensees"); *Beamon* v. *Dept. of Motor Vehicles* (1960) 180 Cal.App.2d 200, 210 [4 Cal.Rptr. 396] (suspension for convictions under Vehicle Code "is not penal; its purpose is to make the streets and highways safe"); *People* v. *Valenzuela* (1991) 3 Cal.App.4th Supp. 6, 8 [5 Cal.Rptr.2d 492] (suspension of minor's license under section 13202.5 upon conviction is not penal but is "is a remedial measure designed to ensure public safety").

creates simply highlights the Legislature's overall concern for public protection. Enactment of the administrative per se statutes afforded the public protection both before and after conviction. It did not somehow transform the Legislature's purpose in enacting section 13352 from protection to punishment.

Baldwin also argues that *Kurth Ranch*, which was decided after *Ellis*, commands a different result in this case.[11] In *Kurth Ranch,* the Supreme Court invalidated a Montana tax on possession of illegal drugs, finding that the tax constituted punishment and that the double jeopardy clause prohibited its imposition in a separate proceeding after imposition of criminal penalties for the same conduct. (*Kurth Ranch, supra,* __ U.S. at p. __ [128 L.Ed.2d at p. 781, 114 S.Ct. at p. 1948].) According to Baldwin, "[t]he key" to the court's conclusion "was that the tax was conditioned on *the commission* of a crime, which was 'significant of penal and prohibitory intent rather than the gathering of revenue.' [Citation.]" (Original italics.) Baldwin then argues: "The analogy to suspension and revocation upon conviction for drunk driving is obvious. The DMV's sanction is operative only against those who are not merely arrested, as in the Montana tax, but those who are *convicted* of a crime. Like the tax in Montana, it is conditioned on the commission of the crime of drunk driving and on nothing else, and the class subject to the sanction are [*sic*] only those so convicted. [Citation.]" (Original italics.)

For two reasons, we reject Baldwin's assertion. First, Baldwin's argument focuses too narrowly on only one factor underlying the *Kurth Ranch* decision. The court in *Kurth Ranch* concluded generally that, "[t]aken as a whole, th[e] drug tax [was] a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." (*Kurth Ranch, supra,* __ U.S. at p. __ [128 L.Ed.2d at p. 781, 114 S.Ct. at p. 1948], fn. omitted.) In reaching this conclusion, the court cited the following factors *in addition* to the one Baldwin identifies: (1) the rate of taxation was extremely high;[12] (2) statutory language evidenced the Montana Legislature's intent to use the

---

[11] In justifying his failure to raise the double jeopardy issue in the superior court, Baldwin states that his argument "would not seem feasible" under *Ellis* and the "double jeopardy jurisprudence" existing before *Kurth Ranch*. He then argues: "However, with the appearance of *Kurth Ranch*, in 1994, . . . the double jeopardy concern comes into clear focus."

[12] The tax amounted to "about 400 percent of [the drug's] market value," a rate that the court characterized as "unrivaled." (*Kurth Ranch, supra,* __ U.S. at p. __, fn. 17 [128 L.Ed.2d at p. 779, 114 S.Ct. at p. 1946].)

tax as a deterrent; and (3) the tax, which was purportedly a property tax, was being levied on goods that the taxpayer neither owned nor possessed at the time of assessment.[13] (*Id.* at pp. ___-___ [128 L.Ed.2d at pp. 779-781, 114 S.Ct. at pp. 1946-1948].) Thus, contrary to Baldwin's assertion, there was no single "key" factor that led to the court's conclusion; the court relied on the totality of the circumstances, not all of which exist in this case.

Second, and more importantly, the court in *Kurth Ranch* indicated that the specific analysis that applies to determine whether a sanction constitutes punishment within the meaning of the double jeopardy clause varies depending upon the sanction under consideration. (*Kurth Ranch, supra,* ___ U.S. at p. ___ [128 L.Ed.2d at p. 781, 114 S.Ct. at p. 1948].) In distinguishing *Halper,* which involved a civil penalty rather than a tax, the court explained: ". . . tax statutes serve a purpose quite different from civil penalties, and *Halper*'s method of determining whether the exaction was remedial or punitive 'simply does not work in the case of a tax statute.' [Citation.] Subjecting Montana's drug tax to *Halper*'s test for civil penalties is therefore inappropriate." (*Kurth Ranch, supra,* ___ U.S. at p. ___ [128 L.Ed.2d at p. 781, 114 S.Ct. at p. 1948].) Similarly, the license revocation here at issue is fundamentally different from a tax and serves a different purpose. Thus, Baldwin's attempt to apply the analysis in *Kurth Ranch* strictly is improper. (See *Helvering* v. *Mitchell* (1938) 303 U.S. 391, 399 [82 L.Ed. 917, 922, 58 S.Ct. 630] [one type of remedial sanction that "is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted"].)

Finally, revocation of Baldwin's license does not constitute punishment under the double jeopardy clause simply because, as Baldwin asserts, it may constitute a severe personal and economic hardship. ". . . [W]hether a sanction constitutes punishment is not determined from the [offender's] perspective, as even remedial sanctions carry the 'sting of punishment.' [Citations.]" (*Kurth Ranch, supra,* ___ U.S. at p. ___, fn. 14 [128 L.Ed.2d at p. 777, 114 S.Ct. at p. 1945].) Rather, we must make this determination by evaluating ". . . the purposes actually served by the sanction in question . . . ." (*Halper, supra,* 490 U.S. at p. 447, fn. 7 [104 L.Ed.2d at p. 501]; see also *Ellis, supra,* 230 Cal.App.3d at p. 1562.) Having determined that the purpose of section 13352 is to protect the public, we reject Baldwin's double jeopardy challenge.

---

[13]Noting that Montana presumably had destroyed the drugs after confiscating them, the court stated: "A tax on 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character." (*Kurth Ranch, supra,* ___ U.S. at p. ___ [128 L.Ed.2d at p. 781, 114 S.Ct. at p. 1948].)

The judgment is reversed, and the matter is remanded to the superior court with directions to deny Baldwin's petition and reinstate the DMV's revocation order. The DMV shall recover its costs on appeal.

Merrill, J., and Corrigan, J., concurred.

A petition for a rehearing was denied July 7, 1995, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied September 21, 1995.