**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Edwin ZIMMERMAN, Defendant and Appellant.**

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Albert E. KNUTSON, Defendant and Appellant.**

Cr. Nos. 950163, 950164.

Supreme Court of North Dakota.

Oct. 31, 1995.

previously had been suspended in an administrative proceeding relating to the same conduct.

That criminal prosecution and administrative driver's license suspension do not constitute double jeopardy has been viewed as firmly established by *State v. Sinner,* 207 N.W.2d 495 (N.D.1973). Defendants argue the result in these cases now must be different because of recent United States Supreme Court decisions in *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989); and *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). We conclude defendants' arguments overreach the holdings in those cases, and analysis of those cases supports the opposite result.

We acknowledge defendants may view the outcomes of both the criminal and administrative proceedings as punishments for the same offense. The perspective of the defendants, however, does not control double jeopardy analysis involving criminal and administrative proceedings. We conclude the criminal and administrative proceedings do not constitute double jeopardy because the administrative action serves the remedial goal of protecting the public from impaired drivers, and the suspension of the license is not greatly disproportionate to the remedial goal. We, therefore, affirm the convictions.

Jeff Rotering, State's Attorney, Hettinger, for plaintiff and appellee.

T.L. Secrest, Hettinger, for defendants and appellants.

Monte L. Rogneby, Assistant Attorney General, amicus curiae on behalf of North Dakota Department of Transportation.

SANDSTROM, Justice.

Defendants Edwin Zimmerman and Albert Knutson appeal their criminal convictions for driving under the influence of alcohol. Each contends his criminal prosecution constituted double jeopardy because his driver's license

I

Knutson, on December 31, 1994, and Zimmerman, on February 5, 1995, were charged with driving under the influence of alcohol, in violation of N.D.C.C. § 39–08–01. Their driver's licenses were administratively suspended—Knutson's for 91 days and Zimmerman's for two years.[1] Knutson and Zimmerman filed motions to dismiss the criminal charges on the ground that the administrative suspension of their driving privileges constituted punishment within the meaning of the double jeopardy clauses of the United States and North Dakota constitutions. The district court denied the motions.

1. This was Zimmerman's third suspension or revocation.

After their motions to dismiss were denied, Knutson and Zimmerman entered conditional pleas of guilty under Rule 11(a)(2), N.D.R.Crim.P. Knutson was fined $250 and ordered to undergo an alcohol addiction evaluation. Zimmerman was sentenced to four days in jail, fined $500, and ordered to undergo an alcohol addiction evaluation.[2] Knutson and Zimmerman appealed, contending administrative suspension of a driver's license is punishment for double jeopardy purposes.

The district court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. § 27–05–06. This Court has jurisdiction under Art. VI, § 2, N.D. Const., and N.D.C.C. § 29–28–06. The appeals were timely under Rule 4(b), N.D.R.App.P.

## II

State legislatures and the Congress have enacted increasingly tougher laws in response to the carnage on our nation's highways. *Kobilansky v. Liffrig,* 358 N.W.2d 781, 791 (N.D.1984)("We may also take judicial notice of the carnage caused by the drunk driver."); *South Dakota v. Neville,* 459 U.S. 553, 558–59, 103 S.Ct. 916, 920, 74 L.Ed.2d 748, 755 (1983)("The carnage caused by drunk drivers is well documented and needs no detailed recitation here.") In addition to stricter laws, and greater punishments, implied-consent laws require submission to blood-alcohol tests, or for suspension of the driver's license for failure to submit to the test.

## A

Our legislature has adopted two primary methods of dealing with drunk drivers. To punish and deter drunk driving, the legislature has enacted criminal proceedings. The legislature has enacted civil proceedings to protect the traveling public by temporarily removing drunk drivers from the highways.

In 1923, our legislature made operating a motor vehicle while intoxicated a misdemeanor punishable by a fine of $25 to $500, or imprisonment in a county jail for up to one year, or both fine and imprisonment, and authorized sentencing judges to suspend any sentence of imprisonment and preclude the offender from driving for a period of up to two years. S.L.1923, Ch. 254, §§ 1 & 2 (codified as C.L.1913, §§ 2976t10 and 2976t11 (1925 Supp.)). Our present criminal statute, N.D.C.C. § 39–08–01, makes it a misdemeanor to drive or be in actual physical control of any vehicle upon a highway while the person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight or is under the influence of intoxicating liquor. N.D.C.C. § 39–08–01, requires a sentence of a fine of at least $250 and an order for addiction evaluation for a first offense and provides increasingly severe mandatory punishments for subsequent offenses.

In 1959, our legislature enacted the Implied Consent Act providing that a person operating a motor vehicle on public highways was deemed to have consented to a chemical test to determine the alcohol content of his or her blood, providing for a six-month revocation of a driver's license for refusal to submit to testing, and making chemical test results admissible evidence. S.L.1959, Ch. 286. Over the years, the Legislature has continued to increase DUI and Actual Physical Control (APC) prohibitions and penalties. *See, e.g.,* S.L.1983, Ch. 415; S.L.1995, Ch. 378.

Our present Implied Consent Act is contained in Chapter 39–20, N.D.C.C. Any person who operates a motor vehicle on a highway is deemed to have consented to a chemical test to determine the alcohol content of his or her blood. N.D.C.C. § 39–20–01. A person's refusal to submit to a chemical test results in revocation of the person's operator's license for one to three years, depending on the number of previous suspensions or revocations. N.D.C.C. § 39–20–04. Under N.D.C.C. § 39–20–04.1, if a chemical test shows an arrested person was driving or in physical control of a vehicle while having a blood alcohol concentration of at least ten one-hundredths of one percent by weight, the person's operator's license is suspended for

---

**2.** Zimmerman was sentenced for a second offense. The record does not disclose which of the

possible explanations for the discrepancy applies.

91 days, 365 days, or two years, depending on the number of times the person has violated N.D.C.C. § 39–08–01 or has had his license suspended or revoked under Ch. 39–20, N.D.C.C.

### B

Congress has enacted laws providing economic incentives for states to toughen driving under the influence laws, and to suspend or revoke driver's licenses through expedited administrative proceedings. 23 U.S.C. § 410.

### III

In *State v. Sinner*, this Court found there was no double jeopardy when the same conduct resulted in criminal prosecution and a separate administrative suspension of a driver's license.

Protection against double jeopardy is afforded by both our federal and state constitutions. "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." Fifth Amendment, U.S. Const. "No person shall be twice put in jeopardy for the same offense...." Art. I, § 12, N.D. Const.

■ Administrative proceedings suspending drivers' licenses are civil in nature, separate and distinct from any criminal proceedings from an arrest for violating N.D.C.C. § 39–08–01, and dismissal or acquittal of a related criminal charge is irrelevant to the administrative proceedings. *See, e.g., Williams v. North Dakota State Highway Comm'r*, 417 N.W.2d 359 (N.D.1987); *Pladson v. Hjelle*, 368 N.W.2d 508 (N.D.1985); *Asbridge v. North Dakota State Highway Comm'r*, 291 N.W.2d 739 (N.D.1980); *Clairmont v. Hjelle*, 234 N.W.2d 13 (N.D.1975).

In *Sinner*, this Court held administrative suspension of a driver's license due to criminal convictions for traffic violations is not double jeopardy because it is not a penalty:

"5. A driver whose license has been administratively suspended due to his convictions for driving infractions is not thereby twice put in jeopardy for the same offense, because the administrative suspension of the driver's license is an exercise of the police power for the protection of the public rather than the imposition of an additional penalty."

*Sinner* at 496–97, Syllabus ¶ 5 (N.D.1973).

This Court's decisions since *Sinner* are consistent with it. "The use of the public highways is not an absolute right ..., it is instead a privilege which a person enjoys subject to the control of the State in its valid exercise of its police power." *State v. Kouba*, 319 N.W.2d 161, 163 (N.D.1982). A driver "must abide by the laws of our state which are intended to make travel on our highways reasonably safe for all." *Kouba.* While "loss of driving privileges is not insubstantial and may entail economic hardship and personal inconvenience," *Kobilansky v. Liffrig*, 358 N.W.2d 781, 787 (N.D.1984), "a driver's license is subject to control and regulation by the state," and a driver's license may be revoked or suspended for violating laws intended to make highway travel reasonably safe. *North Dakota Dep't of Transp. v. DuPaul*, 487 N.W.2d 593, 598 (N.D.1992).

### IV

The United States Supreme Court has not directly addressed the issue of double jeopardy in cases of criminal prosecution for DUI/APC, and administrative license suspension. In related matters, it has upheld the constitutionality of administrative suspension of a driver's licence for failure to submit to a blood alcohol test as required under an implied consent law. *Neville.* In addition, the United States Supreme Court has held Miranda protections do not apply to physical manifestations of impairment, or to questions necessarily "attendant to" the operation of Intoxilizer tests. *Pennsylvania v. Muniz*, 496 U.S. 582, 592 and 605, 110 S.Ct. 2638, 2645 and 2652, 110 L.Ed.2d 528, 545–46 and 554 (1990).

Revocation of a privilege is not ordinarily considered punishment. As the United States Supreme Court has observed, "revocation of a privilege voluntarily granted" is a type of remedial sanction "which is characteristically free of the punitive criminal element." *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922

(1938) (citing deportation and disbarment as examples).

## V

The defendants argue the *Sinner* result no longer applies because of the recent United States Supreme Court decisions in *Halper* and *Kurth Ranch*.[3] They contend the administrative suspension of their driver's licenses for driving under the influence of alcohol constitutes punishment for double jeopardy analysis and precludes criminal punishment based on the same traffic offense. The defendants argue: "The *Kurth Ranch* case evidently stands for the principle that if the purpose of the civil proceedings is to punish or deter, however slight, double jeopardy will apply."

## A

In *Halper*, the manager of a company providing medical services submitted 65 separate false claims for Medicare reimbursement, resulting in the Federal Government being overcharged a total of $585. Halper was convicted on all 65 counts under a criminal false claims statute, sentenced to two years of imprisonment, and fined $5000. The Government then sued under a civil false claims statute subjecting Halper to a statutory penalty of more than $130,000. The district court concluded such a penalty would violate the Double Jeopardy Clause. On appeal, the United States Supreme Court framed the issue as:

"... The sole question here is whether the statutory penalty authorized by the civil False Claims Act, under which Halper is subject to liability of $130,000 for false claims amounting to $585, constitutes a second 'punishment' for the purpose of double jeopardy analysis."

*Halper*, 490 U.S. at 441, 109 S.Ct. at 1898, 104 L.Ed.2d at 497. The Court recognized "a civil penalty authorized by the Act may be so extreme and so divorced from the Govern-

ment's damages and expenses as to constitute punishment." *Halper*, 490 U.S. at 442, 109 S.Ct. at 1898, 104 L.Ed.2d at 497. The Court continued:

"We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence.... From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term."

490 U.S. at 448, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. The Court's holding later in the same paragraph stated a much narrower definition of punishment:

"We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."

*Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. The Court emphasized the narrow reach of its announcement:

"What we announce now is a rule for the rare case, ..., where a fixed-penalty provision subjects a prolific but small-gauge offender to *a sanction overwhelmingly disproportionate* to the damages he has caused."

*Halper*, 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502 (Emphasis added).

## B

In *Kurth*, the United States Supreme Court held a Montana tax on possession of illegal drugs, imposed only after all fines or forfeitures have been satisfied, was punishment for purposes of double jeopardy analysis:

---

**3.** The defendants cite a number of trial court decisions which rely largely on analysis of *Halper* and *Kurth Ranch*: *Arizona v. Austin*, (Municipal Court, Flagstaff, Arizona; Case Numbers 257256/57/58; 1994); *Florida v. Reilly*, (County Court for Broward County, Florida; Case No. 94–6661MM10; 1994); *Iowa v. Hoefing*, (District

Court for Webster County, Iowa; Case No. CR5236–1194; 1995); *City of New Richland v. Van Engelenburg*, (District Court, Waseca County, Minnesota; Case No. TX–94–665; 1995); and *Ohio v. Gustafson*, (Mahoning County Court # 2, Mahoning County, Ohio; Case No. 93–TR 5344 A, B; 1994).

"Taxes imposed upon illegal activities are fundamentally different from taxes with a pure revenue-raising purpose that are imposed *despite* their adverse effect on the taxed activity....

"... Although it purports to be a species of property tax ... it is levied on goods that the taxpayer neither owns nor possesses when the tax is imposed. Indeed, the State presumably *destroyed* the contraband goods in this case before the tax on them was assessed.... A tax on 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character.

"... Montana's tax is fairly characterized as punishment."

*Kurth,* —— U.S. at —— – ——, 114 S.Ct. at 1947–48, 128 L.Ed.2d at 780–81.

The United States Supreme Court explained that *Kurth* applies to taxes, and other civil penalties continue to be governed by *Halper:*

"In *Halper* we considered 'whether and under what circumstances a civil penalty may constitute "punishment" for the purpose of double jeopardy analysis.' 490 U.S., at 436, 109 S.Ct., at 1895. Our answer to that question does not decide the different question whether Montana's tax should be characterized as punishment."

*Kurth,* —— U.S. at ——, 114 S.Ct. at 1944, 128 L.Ed.2d at 776–77. The Court, in *Kurth,* reiterated:

"A defendant convicted and punished for an offense may not have a *nonremedial civil penalty* imposed against him for the same offense in a separate proceeding. *Halper, supra.*"

*Kurth,* —— U.S. at ——, 114 S.Ct. at 1945, 128 L.Ed.2d at 778 (Emphasis added).

## VI

Other state appellate courts considering *Halper* and *Kurth* have concluded separate criminal and administrative DUI proceedings do not constitute double jeopardy.

The Alaska Court of Appeals wrote:

"Administrative license revocation is premised on substantial remedial purposes. Even though administrative license revocation has always contained an element of deterrence, the case law demonstrates that it has traditionally been viewed as remedial rather than punitive. We conclude that administrative license revocation continues to be a 'remedial' sanction, not a 'punitive' sanction, for purposes of the federal double jeopardy clause. Therefore, the administrative revocation of the defendants' licenses is no impediment to their later prosecution for driving while intoxicated, refusing the breath test, or both."

*State v. Zerkel,* 900 P.2d 744, 758 (Alaska App.1995)(Footnotes omitted).

The California Court of Appeal, First District, reasoned:

"In distinguishing *Halper,* which involved a civil penalty rather than a tax, the [United States Supreme C]ourt explained: '... tax statutes serve a purpose quite different from civil penalties, and *Halper*'s method of determining whether the exaction was remedial or punitive "simply does not work in the case of a tax statute." Subjecting Montana's drug tax to *Halper*'s test for civil penalties is therefore inappropriate.' [*Kurth.*] Similarly, the license revocation here at issue is fundamentally different from a tax and serves a different purpose. Thus, Baldwin's attempt to apply the analysis in *Kurth Ranch* strictly is improper."

*Baldwin v. Dep't of Motor Vehicles,* 35 Cal. App.4th 1630, 42 Cal.Rptr.2d 422, 430 (1 Dist.1995)(Internal citations omitted).

The Court of Appeal of Florida, Fifth District, wrote:

"We conclude that the administrative remedy of suspending a driver's license because of drunk driving or other related behavior was and continues to be primarily for the purpose of enhancing safe driving on the public highways. Its effect is remedial in a general or universal sense, because it removes dangerous drivers from the highways. And, it can also be viewed as remedial for the individual driver involved, since in an intoxicated state, a driver poses a serious danger to him or herself, as well as to others."

*Davidson v. MacKinnon,* 656 So.2d 223, 225 (Fla.App.1995).

The Supreme Court of Hawaii, after noting the administrative suspension "protects the public interest by removing potentially threatening drivers" and noting that "punishment" is not determined by the defendant's perception, wrote:

"[W]e hold that Hawaii's [administrative] hearings serve legitimate, nonpunitive, and purely remedial functions, and, therefore, the administrative license revocation proceeding based on DUI did not bar Higa's subsequent criminal prosecution on the grounds of double jeopardy principles."

*State v. Higa,* 79 Hawai'i 1, 897 P.2d 928, 933–34 (1995).

The Supreme Court of Iowa, in upholding separate criminal and administrative proceedings, reasoned:

"The determination turns, not on the nature of the underlying proceeding, but on the purpose actually served by the sanction. When a civil sanction, as applied in an individual case, can only be said to serve the twin goals of punishment—deterrence and retribution—then it must fairly be regarded as triggering the protection of the Double Jeopardy Clause. Conversely, a civil sanction that serves principally a remedial purpose does not subject a defendant to the hazards otherwise safeguarded by the Fifth Amendment's protection against multiple punishments."

*State v. Funke,* 531 N.W.2d 124, 126 (Iowa 1995)(Internal citations omitted).

The Supreme Judicial Court of Maine concluded any punitive or deterrent purpose of license suspension is merely incidental to the purpose of safe roadways, and added:

"Although we acknowledge that any suspension may have a deterrent effect on the law-abiding public, our analysis does not focus on that perspective. In the eyes of the defendant even remedial sanctions may carry a 'sting of punishment.'"

*State v. Savard,* 659 A.2d 1265, 1268 (Me. 1995) (Internal citation omitted).

The Minnesota Court of Appeals, in *State v. Hanson,* 532 N.W.2d 598, 602 (Minn.App. 1995), for double jeopardy analysis under *Halper,* concluded a 90–day license revocation was "not 'overwhelmingly disproportion-ate' to the public safety interest at stake." In *State v. Parker,* 538 N.W.2d 141 (Minn. App.1995) the same court wrote: "Instead, the question in this instance is whether the civil sanction is 'so divorced from any remedial goal that it constitutes "punishment" for the purpose of double jeopardy analysis.' *Halper* [citation omitted]. We hold it is not."

## VII

■ *Halper* and *Kurth* do not change the result of *Sinner.* "[T]he revocation or suspension of a license operates for the benefit of the public and is not intended as a penalty inflicted upon the license holder." *Thompson v. Thompson,* 78 N.W.2d 395, 399 (N.D. 1956). "A license suspension proceeding under § 39–20–05, N.D.C.C., 'is an exercise of the police power for the protection of the public.'" *Williams v. North Dakota State Highway Comm'r,* 417 N.W.2d at 360, quoting *Asbridge v. North Dakota State Highway Comm'r.* The purpose of administrative driver's license suspension procedures is to quickly remove drunk drivers from the road to protect the traveling public. "The obvious state interest served by the implied consent statute is to deprive the drunk driver the privilege of continuing to drive for the public safety." *Kobilansky v. Liffrig,* 358 N.W.2d at 791. "The summary suspension scheme serves the rational remedial purpose of protecting public safety by quickly removing potentially dangerous drivers from the roads." *State v. Strong,* 158 Vt. 56, 605 A.2d 510, 513 (1992). "[T]he state's compelling interest in highway safety justifies the administrative suspension procedures used by the Commissioner." *Kobilansky,* 358 N.W.2d at 791.

Administrative suspension of a driver's license for driving while intoxicated or under the influence of alcohol serves a remedial purpose. Unlike the tax in *Kurth* or the $130,000 civil penalty in *Halper,* any punitive or deterrent value an administrative license suspension may have is merely incidental. While, to the driver whose license is suspended, the "remedial sanction[ ]" of license suspension may "carry the sting of punishment," "whether a sanction constitutes punishment" is not "determined from the defendant's per-

spective." *Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, 104 L.Ed.2d at 501 n. 7. The administrative license suspensions may "fairly be characterized as remedial." *Halper*, 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502. Neither the minimum suspension nor the maximum suspension for a repeat offender, is "overwhelmingly disproportionate" (*Halper*, 490 U.S. at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502) to its remedial, non-punitive goal of getting unsafe drivers off the public highways. In addition to not being a tax as in *Kurth*, an administrative license suspension does not have an "unmistakable punitive character" and is not "fairly characterized as punishment." *Kurth*, —— U.S. at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781.

We conclude the administrative suspensions of Zimmerman's and Knutson's driver's licenses do not constitute punishment for double jeopardy analysis.

### VIII

The judgments of conviction are affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.