**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Richard Clarence STORBAKKEN, Defendant and Appellant.**

**Criminal No. 950359.**

Supreme Court of North Dakota.

July 18, 1996.

David T. Jones, Assistant State's Attorney, and Nancy J. Kloster, third-year law student (argued), Grand Forks, for plaintiff and appellee.

Richard A. Ohlsen, Brainerd, MN, for defendant and appellant.

VANDE WALLE, Chief Justice.

Richard Clarence Storbakken appealed from a judgment of conviction, entered upon a conditional plea of guilty, for driving under the influence of alcohol in violation of section 39–08–01, NDCC. We conclude that the officer's stop of Storbakken's vehicle was valid, that the criminal proceeding did not subject Storbakken to double jeopardy, and that the district court did not abuse its discretion by denying the defendant's motion to suppress the intoxilyzer test results. We affirm the district court's judgment.

On May 25, 1995, at approximately 1:12 a.m., Officer Troy Vanyo with the Grand Forks Police Department, noticed a vehicle traveling on South Washington Street in Grand Forks, North Dakota. The officer saw the vehicle cross the line dividing the

northbound lanes while the vehicle was traveling at 40 miles per hour in a 30 miles per hour zone. After stopping Storbakken, the officer smelled the odor of alcohol. The officer asked Storbakken for his drivers' license, which the officer discovered had been revoked. Officer Vanyo asked Storbakken to accompany him to the patrol car, where the officer administered a series of field sobriety tests, including the "alphabet" test, the "counting backwards" test, and the "finger touch" test. After conducting the field sobriety tests, Officer Vanyo placed Storbakken under arrest for driving under revocation and for driving under the influence of alcohol. The officer took Storbakken to the police station for an intoxilyzer test.

At the police station, Officer Vanyo gave Storbakken the implied consent advisory and determined that nothing had been in his mouth for a period of twenty minutes. After Storbakken consented to the test, Officer Pat Torok, a certified operator of the Intoxilyzer 5000, began the first test sequence by pressing the "start" button and inserting the test record form into the intoxilyzer machine, but the form did not feed into the machine properly. The officer pressed the "start" button to abort the test before Storbakken had the opportunity to give a breath sample. The officer then inserted a second form which the machine accepted. Although the machine's printer continued to experience difficulty, the officer testified he carried on the test sequence and obtained two breath samples from Storbakken. The forms from the aborted test and the completed test were retained.

On June 23, 1995, an administrative hearing officer concluded the State did not prove a legally sufficient basis for stopping Storbakken's vehicle and dismissed the administrative action. After the administrative decision, Storbakken filed motions in the district court to dismiss the criminal DUI charge, or, in the alternative, to suppress evidence. The

district court denied the motions to dismiss, rejecting Storbakken's arguments that the officer lacked reasonable suspicion and that the criminal proceeding subjected him to double jeopardy. The district court also denied Storbakken's motion to suppress evidence of the intoxilyzer test.[1]

On appeal, Storbakken argues the officer did not have a reasonable and articulable suspicion to stop him; the criminal proceeding subjected him to double jeopardy or the district court was collaterally estopped from determining whether the officer had reasonable suspicion to make the stop; and the administration of the intoxilyzer test violated section 39–20–01, NDCC. We disagree with Storbakken's arguments.

I.

Storbakken contends Officer Vanyo did not have a reasonable and articulable suspicion to stop him. To justify the stop of a moving vehicle, an officer must have a reasonable and articulable suspicion that the law has been or is being violated. *City of Grand Forks v. Zejdlik,* 551 N.W.2d 772 (N.D.1996); *City of Grand Forks v. Egley,* 542 N.W.2d 104 (N.D.1996). Reasonable and articulable suspicion requires more than a vague hunch but less than probable cause. *Egley,* 542 N.W.2d at 106; *State v. Ova,* 539 N.W.2d 857 (N.D.1995). We use an objective standard to determine whether a stop is valid. *Egley,* 542 N.W.2d at 106. The issue is " 'whether a reasonable person in the officer's position would be justified by some objective manifestation to suspect potential criminal activity.' " *Ova,* 539 N.W.2d at 859 [quoting *State v. Hornaday,* 477 N.W.2d 245, 246 (N.D.1991) ].

As we have explained, "traffic violations, even if considered common or minor, constitute prohibited conduct and, therefore, provide officers with requisite suspicion for conducting investigatory stops." *State v.*

---

1. The district court granted the defendant's motion to suppress statements made by Storbakken during the administration of the alphabet test and the counting test upon which the State may in part have relied for probable cause to arrest. *See State v. Zummach,* 467 N.W.2d 745 (N.D. 1991) [recitation of the alphabet is not a testimo-

nial communication]. The State did not appeal the suppression. But Storbakken did not adequately raise in the lower court, and thus preserve for appeal, the issue of whether the officer had probable cause to arrest for driving under the influence and we do not consider the issue.

*Stadsvold,* 456 N.W.2d 295, 296 (N.D.1990); *Whren v. United States,* —— U.S. ——, 116 S.Ct. 690, 133 L.Ed.2d 595 (1996) [concluding, as a general matter, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."]. *See, e.g., Egley,* 542 N.W.2d at 107 [defendant was in the city park after 11:00 p.m.]; *State v. Hawley,* 540 N.W.2d 390 (N.D.1995) [defendant partially blocked traffic with her vehicle]; *Stadsvold,* 456 N.W.2d at 295 [defendant traveled without headlights on at night]; *State v. Goeman,* 431 N.W.2d 290 (N.D.1988) [defendant stopped car at a green light]; *State v. Vande-Hoven,* 388 N.W.2d 857 (N.D.1986) [defendant crossed over centerline]; *State v. Klevgaard,* 306 N.W.2d 185 (N.D.1981) [defendant speeding]. The officer's grounds for making the stop, if valid, need not ultimately result in a conviction. *Egley,* 542 N.W.2d at 106–07; *Ova,* 539 N.W.2d at 859. In this instance, Storbakken exceeded the speed limit by traveling at 40 miles per hour in a 30 miles per hour zone. The traffic violation, by itself, constituted a sufficient reason for Officer Vanyo to stop the vehicle.

## II.

■ Storbakken argues the criminal prosecution of the DUI charge following the administrative proceeding to suspend his license subjected him to double jeopardy. In *State v. Zimmerman,* 539 N.W.2d 49, 50 (N.D.1995), we concluded that while "defendants may view the outcomes of both the criminal and administrative proceedings as punishments for the same offense ... the criminal and administrative proceedings do not constitute double jeopardy because the administrative action serves the remedial goal of protecting the public from impaired drivers, and the suspension of the license is not greatly disproportionate to the remedial goal." *See also State v. Jacobson,* 545 N.W.2d 152 (N.D.1996) [interpreting "punishment" for purposes of double jeopardy analysis under state constitutional law the same as under federal constitutional law]; *State v. Lamb,* 541 N.W.2d 457 (N.D.1996). In this instance, Storbakken's license was not suspended during the administrative proceeding because the administrative hearing officer concluded Officer Vanyo lacked reasonable and articulable suspicion to stop Storbakken's vehicle.

■ As an extension of the double jeopardy argument, Storbakken asserts the doctrine of collateral estoppel applies to the criminal proceeding. In *State v. Lange,* 497 N.W.2d 83 (N.D.1993), we explained:

"Within the double jeopardy clauses are the doctrines of res judicata and collateral estoppel. Res [j]udicata, also called claim preclusion, bars the entire prosecution of an offense by prohibiting the relitigation of claims which were raised or could have been raised in a prior action between the same parties or their privies and which were resolved by final judgment in a court of competent jurisdiction....

"Collateral estoppel is a separate and distinct branch of double jeopardy. As a form of issue preclusion, it forecloses the relitigation in a second action based on a different claim of particular issues of either fact or law which were, or by logical and necessary implication must have been, litigated and determined in the prior suit."

*Lange,* 497 N.W.2d at 85 [citations omitted]; *see Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380 (N.D.1992) [describing the differences between res judicata and collateral estoppel]. In essence, under the doctrine of collateral estoppel, " 'when an issue of ultimate fact has once been determined by a valid and final judgment [i.e., an acquittal], that issue cannot again be litigated between the same parties in any future lawsuit [i.e., a prosecution].' " *Lange,* 497 N.W.2d at 85 [quoting *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970) ]. Here, Storbakken contends the State is precluded from litigating in the criminal proceeding whether the officer had a reasonable and articulable suspicion to stop him because the issue was resolved against the State in the administrative proceeding.

We considered a similar issue in *Williams v. North Dakota State Highway Com'r,* 417 N.W.2d 359 (N.D.1987). After being arrested for driving under the influence, Williams requested and received an administrative hearing. One of the issues at the administra-

tive proceeding was " 'whether the arresting officer had reasonable grounds to believe the person had been driving or was in actual physical control of a vehicle in violation of section 39–08–01 or equivalent ordinance.' " *Id.* at 359. The administrative hearing officer concluded the officer had such reasonable grounds and suspended Williams' driving privileges, and Williams appealed. While the appeal was pending, Williams filed a motion with the district court to reverse the administrative decision, arguing that a county court order from the criminal proceeding, which granted Williams' motion to suppress on the basis that the officer did not have reasonable grounds to arrest, was res judicata for the administrative appeal. We concluded a decision in the criminal proceeding on the issue of probable cause to arrest was not res judicata in an appeal from an administrative decision, reasoning that "[t]he Legislature's authorization of both criminal and administrative proceedings upon the arrest of a motorist for driving while under the influence of intoxicating liquor indicates an intention to permit some issues to be litigated twice, thus rendering the doctrine of res judicata inapplicable." *Id.* at 360.[2]

We have recognized that the administrative proceedings to suspend drivers' licenses are civil in nature, separate and distinct from any criminal proceedings arising from an arrest for a driver's violation of section 39–08–01, NDCC. *Zimmerman,* 539 N.W.2d at 52; *Pladson v. Hjelle,* 368 N.W.2d 508 (N.D. 1985); *Asbridge v. North Dakota State Highway Com'r,* 291 N.W.2d 739 (N.D.1980). The rights a licensee may assert in an administrative proceeding differ from those that may be asserted in the criminal proceeding. *Pladson,* 368 N.W.2d at 511. A dismissal or acquittal of the related criminal charge is irrelevant to the disposition of the administrative proceeding, just as an order suppressing evidence in the related criminal proceeding is irrelevant to the administrative decision. *Id.*; *Zimmerman,* 539 N.W.2d at 52; *Asbridge,* 291 N.W.2d at 750. We conclude an administrative hearing officer's determination of whether an officer has reason-

able suspicion to stop a moving vehicle does not preclude litigation of the issue in the related criminal proceeding.

### III.

Storbakken asserts "[t]he trial court erred in holding that subjecting the appellant to a second breath test did not violate" section 39–20–01, NDCC. Under section 39–20–01, NDCC, "any person who operates a motor vehicle on a highway ... is deemed to have given consent, and shall consent, ... to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcohol, other drug, or combination thereof, content of the blood...." We have explained that "[o]nce a motorist is in police custody and a chemical test has been properly administered yielding a readable result, the motorist has a right to refuse any subsequent chemical tests used for determining his or her blood alcohol content." *Broeckel v. Moore,* 498 N.W.2d 170, 173 (N.D.1993). A motorist may be required to submit to a reasonable request for a second test. *Geiger v. Hjelle,* 396 N.W.2d 302 (N.D.1986).

In this instance, the first test record was defective and the test was aborted before Storbakken could provide breath samples. After the second test record was inserted, the officer requested Storbakken to give breath samples, which were properly recorded. Both the defective and completed test records were retained and submitted. *See Bosch v. Moore,* 517 N.W.2d 412 (N.D.1994) [recognizing requirement that test records for "all tests" must be forwarded in compliance with the statute]. We conclude that the trial court did not abuse its discretion in refusing to suppress the results of Storbakken's intoxilyzer test.

We affirm the judgment of conviction.

SANDSTROM, NEUMANN, MARING and MESCHKE, JJ, concur.

---

2. Although *Williams v. North Dakota State Highway Com'r,* 417 N.W.2d 359 (N.D.1987), framed the issue in terms of res judicata, Storbakken accurately argues collateral estoppel, a branch of the broader doctrine of res judicata.