1999 ND 154

**STATE of North Dakota, Plaintiff
and Appellee,**

v.

**Patrick STEWART, Defendant
and Appellant.**

No. 980354.

Supreme Court of North Dakota.

July 29, 1999.

Rehearing Denied Aug. 25, 1999.

Rick L. Volk, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Deborah J. Carpenter, Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Patrick Stewart appealed from an order deferring the imposition of his sentence for making a false claim or statements to the North Dakota Workers Compensation Bureau. We hold the administrative remedy for making a false claim or false statements to the Bureau under N.D.C.C. § 65–05–33 is a civil sanction, and therefore a subsequent criminal prosecution under that statute does not violate the double jeopardy clause of the federal constitution. We affirm.

I

[¶ 2] Stewart received workers compensation benefits for injuries incurred during the course of his employment in 1993. The Bureau periodically required Stewart to complete income and work status cards. In November 1996, Stewart signed an income and work status card which indicated he had done some work, but he had not been paid for it. The Bureau employed Francine Johnson to investigate Stewart's work status and employment income. Johnson videotaped Stewart while he was operating a backhoe, driving truck, and removing snow. On December 19, 1996, Johnson interviewed Stewart without advising him that he was the subject of an investigation. During the interview, Stewart told Johnson he had assisted an excavating company by operating a backhoe, driving truck, and removing snow. On December 23, 1996, the Bureau issued a notice of intent to discontinue Stewart's benefits, which stated he had provided a false statement regarding his return to work status. In May 1997, the Bureau subpoenaed the excavating company's bank records, which indicated the company had paid Stewart $1,410 during the summer and fall of 1996. According to Stewart, he received the money for personal property sold to a principal of the excavating company. After additional investigation, the Bureau issued an October 1997 order denying Stewart further benefits for his injury and requiring him to return previously paid benefits.

[¶ 3] Stewart requested a rehearing on the Bureau's administrative termination of benefits. On April 27, 1998, an administrative law judge recommended finding Stewart did not willfully file a false claim or make false statements to obtain benefits from the Bureau. The ALJ recommended reversing the Bureau's October 1997 order. Stewart acknowledges that the recommendation of the ALJ was not a final determination in the administrative proceeding.[1]

1. On May 29, 1998, the Bureau rejected the ALJ's recommendation. The Bureau concluded Stewart made false statements about his work status and affirmed its October 1997 order requiring him to forfeit future benefits for his injury. The Bureau, however, reversed the part of the October 1997 order requiring Stewart to repay benefits. In December 1998, the district court reversed the Bureau's administrative decision, ruling the

[¶ 4] Meanwhile, on December 18, 1997, the State charged Stewart with a class C felony under N.D.C.C. § 65–05–33 for willfully filing a false claim or making false statements to the Bureau. After the ALJ issued the recommended decision in the administrative proceeding in April 1998, Stewart moved on May 4, 1998, to dismiss this criminal prosecution, claiming the Bureau's investigation violated his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel and the adjudication in the administrative proceeding barred the criminal prosecution. In June 1998, the trial court denied Stewart's motion to dismiss, ruling the remedy for violations of the Fifth and Sixth Amendments was the suppression of any statements made as a result of the violations, not the dismissal of the prosecution. The court also decided the administrative remedy for making false statements to the Bureau was a civil sanction and did not bar the criminal prosecution or violate double jeopardy. Stewart entered an *Alford* plea[2] to a class A misdemeanor violation of N.D.C.C. § 65–05–33, reserving his right under N.D.R.Crim.P. 11(a)(2) to appeal the trial court's decision denying his pretrial motion. The court deferred the imposition of sentence for one year, and Stewart appealed.[3]

## II

[¶ 5] Stewart argues the Bureau's investigation violated his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel, because his statements to Johnson occurred after the Bureau started a fraud investigation focusing on his conduct. Stewart claims he was not advised of his right to

counsel before he talked to Johnson, and he argues the prosecution should have been dismissed because of violations of his Fifth and Sixth Amendment rights.

[¶ 6] The Fifth Amendment of the United States Constitution provides no "person ... shall be compelled, in any criminal case, to be a witness against himself," while the Sixth Amendment grants the accused the right to the assistance of counsel "[i]n all criminal prosecutions." The protections afforded by those provisions apply to "any criminal case" and "all criminal prosecutions." *See United States v. Ward,* 448 U.S. 242, 248–51, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (holding civil proceedings do not trigger self-incrimination protections afforded criminal defendant).

[¶ 7] In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court held the prosecution may not use statements made during the "custodial interrogation" of a defendant unless it demonstrates the use of procedural safeguards, now generally referred to as *Miranda* warnings, to secure the privilege against self-incrimination. The Court defined "custodial interrogation" to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* The Sixth Amendment right to counsel attaches after initiation of formal criminal charges. *Michigan v. Harvey,* 494 U.S. 344, 353, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *Brewer v.*

Bureau had established Stewart willfully failed to report income from employment, but the Bureau had not provided Stewart with proper notice of termination of benefits and had unreasonably delayed issuing an appealable order. The district court reinstated Stewart's benefits until the Bureau, with proper notice, reinitiated proceedings to terminate his benefits. The Bureau has appealed to this Court from the district court's judgment in the administrative proceeding.

2. *See North Carolina v. Alford,* 400 U.S. 25, 38, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (holding trial court did not commit constitutional error in accepting guilty plea despite defendant's claim of innocence).

3. In *State v. Van Beek,* 1999 ND 53, ¶ 10, 591 N.W.2d 112, we recently held an order deferring imposition of sentence complied with N.D.R.Crim.P. 32(b) and served as a judgment of conviction for purposes of appeal.

*Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Massiah v. United States,* 377 U.S. 201, 205, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964).

■ [¶ 8] Here, Johnson interviewed Stewart in December 1996, but the State did not initiate formal criminal charges against him until December 1997. Stewart's Sixth Amendment right to counsel therefore had not attached when Johnson interviewed him in December 1996.[4]

■ [¶ 9] Moreover, the remedy for violations of the privilege against self-incrimination and the right to counsel is suppression of a defendant's statements made after violation of those provisions. *See, e.g., United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981); *Miranda,* 384 U.S. at 479, 86 S.Ct. 1602. *See also City of Fargo v. Ternes,* 522 N.W.2d 176, 179 (N.D.1994). In *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966) (footnote and citations omitted), the Supreme Court explained:

> Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. While the general common-law practice is to admit evidence despite its illegal origins, this Court in a number of areas has recognized or developed exclusionary rules where evidence has been gained in violation of the accused's rights under the Constitution, federal statutes, or federal rules of procedure.... Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. So drastic a step might advance marginally some of

the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.

■ [¶ 10] Stewart sought dismissal of the charges. In support of his motion to dismiss, Stewart submitted the administrative law judge's recommended findings, which said Stewart voluntarily informed Johnson about removing snow, driving truck, and operating a backhoe. Stewart also submitted Johnson's partial deposition which suggested the interview occurred at Stewart's residence. No evidentiary hearing was held on Stewart's motion to dismiss, and no other evidence was developed regarding the circumstances of the interview. The trial court ruled Stewart's claimed violations of his right to counsel and privilege against self-incrimination "seem[ ] to have little foundation in support of the same. If, in fact, [Stewart] made statements or gave information in the absence of the appropriate warnings, the remedy is not a dismissal of the action. It is suppression of the statements." We agree, and we hold the trial court did not err in refusing to dismiss the charge against Stewart for the claimed violations of his privilege against self-incrimination and his right to counsel.[5]

## III

■ [¶ 11] Stewart argues the adjudication in the administrative proceeding bars this criminal prosecution under the double jeopardy clause of the Fifth Amendment. Stewart argues the crux of this case is "whether the Bureau can initiate criminal proceedings against a claimant when it has already failed to prove its case after a full hearing in the civil matter." Stewart argues the administrative proceeding and the criminal prosecution arise under the

---

4. Insofar as Stewart's argument suggests defendant is entitled to *Miranda* warnings when defendant becomes the focus of an investigation, that argument was rejected by this Court in *State v. Fields,* 294 N.W.2d 404, 406 (N.D. 1980).

5. We express no opinion about whether the circumstances of the interview constituted custodial interrogation within the meaning of *Miranda.*

same statute, conduct, and evidence, and the administrative adjudication bars the criminal action under *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ [¶ 12] The Fifth Amendment of the United States Constitution prohibits a person from being twice put in jeopardy for the same offense. In *Blockburger*, 284 U.S. at 304, 52 S.Ct. 180, the Supreme Court outlined the test for deciding whether a defendant has been punished twice for the same offense: If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Under *Blockburger* and its progeny, double jeopardy precludes successive criminal punishments or prosecutions for the same offense. *See Rutledge v. United States*, 517 U.S. 292, 297–300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) (concluding double jeopardy precluded multiple punishments for crimes of continuing criminal enterprise and conspiracy where conspiracy was lesser included offense of continuing criminal enterprise); *United States v. Dixon et al.*, 509 U.S. 688, 694–97, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (concluding double jeopardy precluded subsequent prosecution for drug offense where defendant previously found guilty of criminal contempt by committing the drug offense in violation of condition of release on unrelated charge). *Ball v. United States*, 470 U.S. 856, 861–64, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985) (concluding double jeopardy barred multiple prosecutions under statutes directed at "receipt" and at "possession" of firearm because the statutes criminalized same offense); *Whalen v. United States*, 445 U.S. 684, 691–95, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) (concluding double jeopardy precluded multiple punishments for rape and felony murder predicated on the rape).

[¶ 13] This case does not involve successive criminal prosecutions. The issue here is whether a criminal prosecution is barred by a prior administrative proceeding. In this situation, the proper analysis follows the line of cases culminating in *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), which considered whether a prior administrative sanction barred a subsequent criminal prosecution for the same conduct. When the administrative and the criminal proceeding involve the same conduct, the issue is whether the administrative proceeding is deemed a criminal or civil proceeding for double jeopardy purposes. *See Hudson*, at 107, 118 S.Ct. 488 (concurring opinion by Justice Stevens stating double jeopardy not implicated unless second proceeding involves "same offense" as first proceeding).

[¶ 14] In *Hudson*, 522 U.S. at 99–100, 118 S.Ct. 488, the Supreme Court outlined the framework for deciding whether administrative proceedings are criminal or civil for purposes of double jeopardy analysis:

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering [v. Mitchell]*, [303 U.S. 391] at 399 [58 S.Ct. 630, 82 L.Ed. 917 (1938)]. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward*, 448 U.S., at 248, 100 S.Ct. 2636. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.*, at 248–249, 100 S.Ct. 2636, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956).

In making this latter determination, the factors listed in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affir-

mative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id.* at 169 [83 S.Ct. 554], and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward, supra,* at 249 [100 S.Ct. 2636] (internal quotation marks omitted).

In *Hudson,* 522 U.S. at 98–105, 118 S.Ct. 488, the Court applied that test to a proceeding for the administrative imposition of a monetary penalty and occupational debarment. The Court held the administrative proceeding was civil, not criminal, and therefore did not bar a subsequent criminal prosecution for essentially the same conduct. *Id.* at 95, 105, 118 S.Ct. 488.

[¶ 15] We apply *Hudson* to this case. Section 65–05–33, N.D.C.C.,[6] provides, in relevant part:

*Filing false claim or false statements— Penalty.* Any person claiming benefits or payment for services under this title, who willfully files a false claim or makes a false statement, or willfully fails to notify the bureau as to the receipt of income, or an increase in income, from employment, after the issuance of an order awarding benefits, in connection with any claim or application under this title is guilty of a class A misdemeanor, but if the act is committed to obtain, or pursuant to a scheme to obtain, more than five hundred dollars in benefits or services, the offense is a class C felony. Provided further that:

. . . .

2. In addition to any other penalties provided by law, the person claiming benefits or payment for services in violation of this section shall reimburse the bureau for any benefits paid based upon the false claim or false statement and, if applicable, under section 65–05–29 and shall forfeit any additional benefits relative to that injury.

[¶ 16] The Legislature initially adopted N.D.C.C. § 65–05–33 in 1981 N.D. Sess. Laws ch. 643, § 1, to restore criminal penalties which had been repealed when our current criminal code, N.D.C.C. tit. 12.1, was adopted effective July 1, 1975, and which were deemed inadequate under that enactment. *See* Hearing on S.B. 2127 Before Senate Industry, Business and Labor Committee, 47th N.D. Legis. Sess. (Jan. 14, 1981) (testimony of Bronald Thompson, Chairman of North Dakota Workmen's Compensation Bureau). *See also* 1973 N.D. Sess. Laws ch. 116, § 42; 1975 N.D. Sess. Laws ch. 106, § 673.[7]

[¶ 17] Section 65–05–33, N.D.C.C., authorizes the Bureau to use administrative proceedings to recoup benefits paid to a claimant based upon a false claim or statements and to require a claimant to forfeit

---

6. The State alleged Stewart violated N.D.C.C. § 65–05–33 between June 1996 and January 1997, and we apply the version of the statute in effect then. *See State v. Goodbird,* 344 N.W.2d 483, 486 (N.D.1984); *State v. Kaufman,* 310 N.W.2d 709, 715 (N.D.1981). Section 65–05–33, N.D.C.C., was amended by 1997 N.D. Sess. Laws ch. 534, § 4.

7. 1975 N.D. Sess. Laws ch. 106, § 673 repealed N.D.C.C. § 65–05–31, which provided:

*False statement—Penalty.*—Any person who, in any affidavit required in any claim for compensation, or in any employer's report required by the bureau in connection with any claim for compensation, knowingly makes any false statement, is guilty of perjury and shall be punished by a fine of not more than two thousand dollars, or by imprisonment in the penitentiary for not more than one year, or by both such fine and imprisonment.

any additional benefits relative to that injury. *See Zueger v. North Dakota Workers Comp. Bur.*, 1998 ND 175, 584 N.W.2d 530; *Hopfauf v. North Dakota Workers Comp. Bur.*, 1998 ND 40, 575 N.W.2d 436; *Hausauer v. North Dakota Workers Comp. Bur.*, 1997 ND 243, 572 N.W.2d 426; *Dean v. North Dakota Workers Comp. Bur.*, 1997 ND 165, 567 N.W.2d 626; *F.O.E. Aerie 2337 v. North Dakota Workers Comp. Bur.*, 464 N.W.2d 197 (N.D.1990); *Hayden v. North Dakota Workers Comp. Bur.*, 447 N.W.2d 489 (N.D.1989).

[¶ 18] In *Hausauer*, 1997 ND 243, at ¶¶ 12–13, 572 N.W.2d 426, we recently explained:

> To trigger the statutory consequences under § 65–05–33 for a false claim or false statement by a person claiming benefits or payment of services, the Bureau must prove: (1) there is a false claim or false statement; (2) the false claim or false statement is willfully made; and (3) the false claim or false statement is made in connection with any claim or application under this title. We additionally require the Bureau to prove the false statement is material. *Dean*, 1997 ND 165, ¶ 15, 567 N.W.2d 626 (citing *F.O.E. Aerie 2337 v. Workers Comp. Bureau*, 464 N.W.2d 197, 201 (N.D.1990)). We have defined "willfully" in the context of this statute's civil penalties as conduct engaged in intentionally, not inadvertently. *Id.*

> Once triggered, N.D.C.C. § 65–05–33 provides for both criminal and civil penalties. The civil penalties include reimbursement to the Bureau "for any benefits paid based upon the false claim or false statement" and "forfeit[ure of] any additional benefits relative to that injury." N.D.C.C. § 65–05–33(2). In order to trigger the civil penalties, the Bureau must prove the elements of N.D.C.C. § 65–05–33 by a preponderance of the evidence. *See F.O.E. Aerie 2337*, 464 N.W.2d at 200.

[¶ 19] Under N.D.C.C. § 65–05–33, the Legislature has clearly indicated its intent to authorize both an administrative sanction and a criminal penalty for making a false claim or false statements to the Bureau. *See Hayden*, 447 N.W.2d at 494–95 (stating statute provides for an administrative sanction and a criminal sanction and whether a claimant is criminally prosecuted is irrelevant to the Bureau's right to impose an administrative sanction).

[¶ 20] We therefore consider whether the civil statutory scheme is so punitive in purpose or effect as to transform what is denominated as an administrative remedy into a criminal penalty under the *Mendoza–Martinez* factors. *See Hudson*, 522 U.S. at 99, 118 S.Ct. 488. Under those factors, we are not persuaded there is evidence of the "clearest proof" necessary to override the legislative intent and transform the administrative remedy into a criminal penalty.

[¶ 21] The requirement for a claimant to reimburse the Bureau for benefits paid because of a false claim or statements and to forfeit additional benefits relative to that injury cannot be historically regarded as a form of punishment. In *Hudson*, 522 U.S. at 104, 118 S.Ct. 488, the Court said the requirement for payment of a fixed or variable sum of money and debarment from the banking profession constituted a civil penalty. If the requirement for payment of a fixed sum of money can be a civil penalty, the requirement for a claimant to reimburse benefits obtained because of a false claim or statements and to forfeit additional future benefits for that injury, which are both forms of restitution serving a remedial goal, cannot be characterized as a form of punishment under *Hudson*.

[¶ 22] The sanctions imposed under N.D.C.C. § 65–05–33 do not involve an "affirmative disability or restraint." In *Hudson*, 522 U.S. at 104, 118 S.Ct. 488, the Court explained although the defendants in that case were precluded from participating in their occupation in the future, that proscription did not approach the infamous punishment of imprisonment. Although a claimant who makes a false claim

or statements may forfeit future additional benefits relative to that injury, a forfeiture of future benefits also does not approach the disability or restraint of imprisonment. Instead, the forfeiture of future benefits for "that injury" helps preserve the integrity of the workers compensation system. *See Hausauer*, 1997 ND 243, at ¶ 18, 572 N.W.2d 426 (stating if the Bureau is seeking forfeiture of future benefits, a false claim or false statement is sufficiently material if it is a statement which could have misled the Bureau or medical experts in a determination of the claim). The administrative sanction tracks the amount of benefits paid because of false statements and authorizes the Bureau to avoid paying future benefits for "that injury" for which the claimant has made a false statement. We are not persuaded those administrative sanctions are excessive when considered in relation to the objective of N.D.C.C. § 65–05–33 to help preserve the integrity of the workers compensation system.

[¶ 23] Both the administrative and criminal sanctions under N.D.C.C. § 65–05–33 involve the same conduct and a willful scienter. Those similarities, however, are not controlling. *See Hudson*, 522 U.S. at 101, 118 S.Ct. 488 (explaining no one factor is controlling). In a related area, the Legislature has authorized administrative and criminal sanctions for driving under the influence, and those dual sanctions may be imposed for the same conduct and the same degree of culpability. *See* N.D.C.C. §§ 39–08–01 and 39–20–04.1. We nevertheless have held the administrative sanction for driving under the influence is not a criminal penalty for purposes of the double jeopardy clauses of the state and federal constitutions. *State v. Jacobson*, 545 N.W.2d 152, 153 (N.D.1996); *State v. Zimmerman*, 539 N.W.2d 49, 56 (N.D.1995). Although these administrative and criminal sanctions are both embodied in the same statute, the structure of the statute does not necessarily preclude both a criminal penalty and a civil administrative sanction.

[¶ 24] This administrative remedy undoubtedly may deter others from making a false claim or statements. The presence of a criminal objective like deterrence, however, does not defeat the otherwise remedial nature of the administrative sanction. *See Hudson*, 522 U.S. at 101, 118 S.Ct. 488. Although defendants and claimants may view the outcomes of both the administrative and criminal proceedings as punishment for the same offense, their perspective does not control the double jeopardy analysis. *See Zimmerman*, 539 N.W.2d at 50. Protecting the Bureau from fraud is a legitimate remedial purpose of the administrative sanction, and holding otherwise would seriously undermine the Bureau's ability to administer the workers compensation laws.

[¶ 25] Under the *Hudson* framework, we hold there is not clear proof necessary to transform the civil administrative sanction under N.D.C.C. § 65–05–33 into a criminal penalty. We conclude the administrative proceeding for reimbursement of benefits paid because of false statements or a false claim and for forfeiture of additional benefits for that injury is a civil sanction. We therefore hold the double jeopardy clause of the federal constitution does not bar the criminal prosecution of Stewart.[8]

## IV

[¶ 26] Relying on *State v. Storbakken*, 552 N.W.2d 78 (N.D.1996), Stewart argues this case raises broader concepts of collateral estoppel and res judicata as part of double jeopardy. Stewart's argument implies the ALJ's recommendation in the administrative proceeding is binding in this criminal prosecution.

[¶ 27] In *Storbakken* at 82, we rejected a similar argument in an appeal from a criminal conviction for driving under the influence. There an administrative law judge had decided the State did not prove

---

8. Stewart has not marshaled a separate double jeopardy argument under the state constitution, *see State v. Olson*, 1998 ND 41, ¶ 13 n. 1, 575 N.W.2d 649, and we limit our analysis to the federal constitution.

a legally sufficient basis for stopping a motorist's vehicle and dismissed the administrative proceeding against the motorist. *Id.* at 80. We affirmed the criminal conviction, concluding the Legislature's authorization of both administrative and criminal proceedings for driving under the influence indicated an intent to permit some issues to be litigated twice. *Id.* at 82. *See also Williams v. North Dakota State Highway Comm'r,* 417 N.W.2d 359, 360 (N.D.1987) (holding decision suppressing evidence in DUI prosecution was not res judicata in appeal from administrative decision suspending motorist's driving privileges).

 [¶ 28] Here, the Legislature's authorization of both criminal and administrative proceedings for false statements indicates an intent to permit those issues to be litigated twice, thus rendering the related doctrines of res judicata and collateral estoppel inapplicable. Under these circumstances, the administrative adjudication is not binding in this criminal prosecution.

[¶ 29] As our recitation of facts explains, the Bureau rejected the ALJ's recommendation that Stewart did not willfully make false statements about his work status. The administrative action and the criminal prosecution are separate proceedings which require different burdens of proof. *See Hausauer,* 1997 ND 243 at ¶ 13, 572 N.W.2d 426 (stating to trigger civil remedies Bureau must prove elements of N.D.C.C. § 65–05–33 by preponderance of evidence); N.D.C.C. § 12.1–01–03(1) (stating elements of criminal offense must be proven beyond a reasonable doubt).

[¶ 30] Although the trial court refused to dismiss this prosecution, it recognized these different burdens of proof when it observed:

I believe the facts in this case are much stronger and should give the State's Attorney serious pause to reflect whether additional information will be obtained in the trial of the criminal matter. Here, after a full blown hearing with evidence that was gathered for both

files, the administrative law judge has found that there is insufficient evidence to find by the greater weight of the evidence that false statements had been made. The State obviously must be aware that the standard they will be held to is much higher. In this case, the statute to be applied is exactly the same and, as far as the court knows, the evidence will be the same. The State should seriously consider whether the use of the judicial resources is vindictive or for a necessary purpose.

[¶ 31] Despite the trial court's intimation that the State may have difficulties proving its case under the higher burden of proof when the Bureau could not convince the ALJ under a preponderance burden, the defendant pled guilty and brought to this Court only constitutional issues which we hold are without merit. We do not, for purposes of this appeal, review the record of the administrative proceeding.

V

[¶ 32] We affirm the order deferring the imposition of sentence.

[¶ 33] Gerald W. Vande Walle, C.J., Dale V. Sandstrom, William A. Neumann, Mary Muehlen Maring, JJ., concur.