Filed 7/29/99 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

1999 ND 152

In the Interest of T.J.K., Minor Child

     -------------------------------------    

Gloria J. Maragos, Petitioner and Appellant

v.

T.J.K., child, G.K., mother,

and J.K., father, Respondents and Appellees

No. 990067

Appeal from the Juvenile Court of Ward County, Northwest Judicial District, the Honorable Glenn Dill, III, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Kapsner, Justice.

Timothy C. Wilhelm, Assistant State's Attorney, Courthouse, P.O. Box 5005, Minot, ND 58702-5005, for petitioner and appellant.

Thomas K. Schoppert, Schoppert Law Firm, Northland Professional Bldg., 600-22nd Avenue NW, Minot, ND 58703, for respondents and appellees.

In the Interest of T.J.K.

No. 990067

Kapsner, Justice.

[¶1]  
This is an appeal from a juvenile court order dismissing a petition which alleged T.J.K., a minor child, was unruly.  After concluding the police officer who stopped T.J.K.’s vehicle lacked a reasonable and articulable suspicion T.J.K. had violated or was violating the law, the judicial referee granted T.J.K.’s motion to suppress evidence he was operating a motor vehicle under the influence of alcohol.  We reverse and remand to the juvenile court for further findings.   

I.

[¶2] On September 6, 1998, at approximately 10:17 p.m., Officer Goodman of the Minot Police Department was traveling eastbound in his patrol car on University Avenue approaching the intersection of University and 8
th
 Street N.W.  As he approached the intersection, Officer Goodman observed T.J.K.’s vehicle stopped in the westbound turning lane of University with its left turn signal on indicating T.J.K.’s intent to turn south onto 8
th
 Street N.W.  Officer Goodman then observed a third vehicle traveling westbound on University approach the intersection in the lane for through traffic.  As he drove through the intersection, Officer Goodman testified  he looked in his rearview mirror and observed the third vehicle make an illegal left hand turn in front of T.J.K.’s vehicle.  After deciding to stop the third vehicle for the illegal turn, Officer Goodman testified he turned right onto 7
th
 Street and traveled around the block until he reached 8
th
 Street N.W.  He testified he turned onto 8
th
 Street N.W. and was surprised to observe T.J.K.’s vehicle traveling in front of the third vehicle.  While following the vehicles, Officer Goodman testified he saw T.J.K.’s vehicle weave into the oncoming lane of traffic and heard its tires squeal after stopping at a stop sign.  For those reasons, Officer Goodman testified, he stopped T.J.K.’s vehicle instead of the third vehicle. 

[¶3] As a result of the stop, a petition was filed in juvenile court alleging T.J.K. had driven under the influence of alcohol in violation of N.D.C.C. § 39-08-01.  T.J.K. filed a motion to suppress all evidence obtained as a result of the stop contending Officer Goodman lacked a reasonable and articulable suspicion T.J.K. had violated or was violating the law when he stopped T.J.K.’s vehicle.  T.J.K. asserted his vehicle never weaved into the oncoming lane of traffic, and he did not squeal its tires after stopping at a stop sign.  Following a hearing on the motion, the judicial referee granted T.J.K.’s motion to suppress.  Upon review, the juvenile court confirmed the referee’s findings and recommendations.  The judicial referee concluded, absent the suppressed evidence, the State was “left without evidence to proceed” and recommended the petition be dismissed.  The juvenile court confirmed the referee’s findings and recommendation and ordered the petition be dismissed. 

II.

[¶4] The petitioner contends the judicial referee’s findings of fact were incomplete and erroneous in part.  The petitioner asserts the juvenile court erred in dismissing the petition because Officer Goodman had a reasonable and articulable suspicion of illegal activity warranting an investigatory stop of T.J.K.’s vehicle.   

[¶5] Whether Officer Goodman had a reasonable and articulable suspicion T.J.K. violated the law is the dispositive issue on appeal.  Disputes concerning the underlying factual circumstances of a stop are questions of fact.  
See
 
Salter v. North Dakota Dep’t of Transp.
, 505 N.W.2d 111, 112 (N.D. 1993).  “The ultimate conclusion of whether the facts support a reasonable and articulable suspicion is a fully reviewable question of law.”  
City of Fargo v. Ovind
, 1998 ND 69, ¶ 6, 575 N.W.2d 901; 
see also
 
State v. Kenner
, 1997 ND 1, ¶ 7, 559 N.W.2d 538 (citation omitted).  

[¶6] Our review of the juvenile court’s decision is governed by N.D.C.C. § 27-20-

56.  We review “the files, records, and minutes or transcript of the evidence of the juvenile court, giving appreciable weight to the findings of the juvenile court.”  N.D.C.C. § 27-20-56(1); 
In the Interest of J.C.S.
, 1997 ND 126, ¶ 5, 565 N.W.2d 759 (citation omitted).  “Although we examine the evidence in a manner comparable to the former procedure of trial de novo, we accord appreciable weight to the findings of the juvenile court, because that court had the opportunity to hear the testimony and observe the demeanor of the witnesses.”  
In the Interest of R.D.B.
, 1998 ND 15, ¶ 9, 575 N.W.2d 420; 
see also
 
In the Interest of R.K.E.
, 1999 ND 106, ¶ 4, 594 N.W.2d 702.

[¶7] To justify the stop of a moving vehicle for investigation, an officer must have a reasonable and articulable suspicion the motorist has violated or is violating the law.  
Ovind
, 1998 ND 69, ¶ 8, 575 N.W.2d 901; 
Kenner
, 1997 ND 1, ¶ 8, 559 N.W.2d 538; 
State v. Storbakken
, 552 N.W.2d 78, 80 (N.D. 1996); 
see also
 4 Wayne R. LaFave, 
Search and Seizure: A Treatise on the Fourth Amendment
 § 9.4  (3d ed. 1996) (discussing grounds for a permissible stop).  The reasonable and articulable suspicion standard requires more than a “mere hunch,” but less than probable cause.  
Ovind
, at ¶ 8; 
see also
 
City of Grand Forks v. Egley
, 542 N.W.2d 104, 106 (N.D. 1996).  The validity of a stop is evaluated by using an objective standard and assessing the totality of the circumstances.  
Ovind
, at ¶ 8.  

[¶8] The ultimate issue is whether a reasonable person in the officer’s position would have been justified in stopping the vehicle because of some objective manifestation to suspect potential criminal activity.  
Storbakken
, 552 N.W.2d at 80 (citation omitted); 
Egley
, 542 N.W.2d at 106 (citation omitted); 
Salter
, 505 N.W.2d at 114.  However, the officer’s grounds for stopping a vehicle need not result in the ultimate conviction. 
Storbakken
, at 81.  This court has discussed three situations in which an officer has reasonable and articulable suspicion to stop a vehicle: “(1) where the officer relied upon a directive or request for action from another officer; (2) where the officer received tips from other police officers or informants, which were then corroborated by the officer’s own observations; and (3) where the officer directly observed illegal activity.”  
Ovind
, 1998 ND 69, ¶ 10, 575 N.W.2d 901 (citations omitted).   

[¶9] “It is well settled, traffic violations, even if considered common or minor, constitute prohibited conduct which provide officers with requisite suspicion for conducting investigatory stops.”  
Zimmerman v. North Dakota Dep’t of Transp.
, 543 N.W.2d 479, 482 (N.D. 1996); 
see also
 
City of Bismarck v. Glass
, 1998 ND App 1, ¶ 12, 581 N.W.2d 474; 
Storbakken
, 552 N.W.2d at 80 (citation omitted).  Driving or weaving upon the wrong half of the roadway is a traffic violation under N.D.C.C. § 39-10-08(1).  
See
 
Zimmerman
, at 481-82 (deciding a reasoning mind could have concluded Zimmerman committed a traffic violation by crossing the center line out of her lane of traffic); 
State v. VandeHoven
, 388 N.W.2d 857, 859 (N.D. 1986) (concluding weaving provided sufficient basis to create an articulable and reasonable suspicion VandeHoven was violating the law); 
State v. Dorendorf
, 359 N.W.2d 115, 116-17 (N.D. 1984) (concluding the officers had the requisite reasonable suspicion to stop Dorendorf after observing his vehicle weaving within its own lane of traffic).  
But see
 
Salter
, 505 N.W.2d at 113-14 (deciding an officer’s observation of “slight” or “minimum” weaving was insufficient to serve as a valid basis for stopping Salter’s vehicle).    

[¶10] This court has concluded a police officer had a reasonable and articulable suspicion warranting an investigatory stop of a vehicle when it was "making excessive or unusual noise in violation of the law.”  
See, e.g.
, 
State v. Beyer
, 441 N.W.2d 919, 922-23 (N.D. 1989); 
Wolf v. North Dakota Dep’t of Transp.
, 523 N.W.2d 545, 547 (N.D. 1994) (citation omitted).  In 
Wolf
, at 547, the officer “heard a vehicle exhibiting a real loud exhaust noise” and “noticed there was a loud popping noise” when the vehicle slowed.  We concluded the evidence supported an administrative finding that the officer had a reasonable and articulable suspicion of a traffic violation warranting the stop of Wolf’s car.  
Id.
; 
see also
 N.D.C.C. § 39-08-03.1(2)(b) (defining the traffic violation of exhibition driving as “driving a vehicle in a manner which disturbs the peace by creating or causing unnecessary engine noise, tire squeal, skid, or slide upon acceleration or braking; or driving and executing or attempting one or a series of unnecessarily abrupt turns”). 

[¶11] Here, Officer Goodman testified he stopped T.J.K.’s vehicle “due to his weaving on the roadway and due to the spinning and squealing of his tires at the intersection of 8
th
 Street and 3
rd
 Avenue Northwest.”  He testified T.J.K.’s vehicle “fully left the southbound lane or transgressed into the northbound lane.”  Such driving is a clear violation of N.D.C.C.  § 39-10-08(1) and would have constituted a reasonable basis to stop T.J.K.’s vehicle.  However, T.J.K. testified his vehicle never made any weaving movements and never crossed over the centerline in the roadway.  He further testified his foot “slipped off the clutch,” and he squealed the vehicle’s tires “a little bit” after stopping at a stop sign.  The driver of the third vehicle testified he observed T.J.K.’s vehicle “swerving a little,” but it never crossed over the center line into the oncoming lane of traffic.  He also testified he heard T.J.K. squeal the tires on his vehicle, but the squeal was not “out of the ordinary.”  A passenger in the third vehicle testified he saw T.J.K.’s vehicle “swerving a little bit” and  “heard a squeal mark.”  

[¶12] Because of the discrepancy in the testimony, it was necessary for the judicial referee to make a credibility determination in order to decide whether Officer Goodman had a reasonable and articulable suspicion of illegal activity warranting an investigatory stop of T.J.K.’s vehicle.  However, the judicial referee stated as findings of fact:

6.  The officer turned right off University Ave., down Lincoln Ave., then on to 5
th
 Ave. N.W. and came to 8
th
 St. N.W.  The officer testified that when he caught sight of the vehicles, [T.J.K.’s] vehicle was in front of the third vehicle and that confused him.  The Petitioner argues that the “wrong” car was in front.  The officer then turned in behind the vehicles traveling south on 8
th
 St. N.W. and followed them.  The officer testified that he did not activate the red lights to stop the vehicle that he had seen make an illegal turn after coming in contact with the vehicle because he saw the Respondent’s vehicle weave crossing into the northbound lane.  The officer testified in Court that there was really just one weave that he could remember.  Also, the officer testified that in addition to the weaving, the Respondent squealed the tires on his vehicle after he stopped at a stop sign.  Based on the weaving and tire squealing, the officer then made a decision to stop the Respondent’s vehicle, instead of the vehicle which made the illegal turn, because he believed the Respondent’s driving posed a more serious situation.  

7.  The Respondent denies that he was weaving across both lanes on 8
th
 St. N.W.  There were two additional witnesses that testified in Court that the Respondent may have swerved a little but always remained in his lane.  The Respondent denies squealing his tires.  The two witnesses testified that there was not a long drawn out squeal but it sounded as if the Respondent may have slipped off the clutch.  In any event, the witnesses testified that the squeal was not out of the ordinary.

8.  The Respondent’s mother, . . . testified that when she went down to the police station she had a conversation with Officer Goodman. [T.J.K.’s mother] testified that when she asked Officer Goodman if her son was all over the road he told her no.  Officer Goodman does not deny that he had a conversation with [T.J.K.’s mother] but denies telling her that her son wasn’t weaving all over the road.

9.  The Court finds that based on the testimony and evidence presented, Officer Goodman did not have an articulable and reasonable suspicion to stop the motor vehicle driven by [T.J.K.] and the Motion to Suppress should be granted.   

[¶13] Our review of the judicial referee’s decision must give “appreciable weight” to the referee’s findings of fact under N.D.C.C. § 27-20-56(1).  Here, however, the judicial referee’s findings merely recited the trial testimony.  “The mere recitation of testimony is not equivalent to a finding of fact.”  
In the Matter of the Estate of Christ Dittus v. Moore
, 497 N.W.2d 415, 419 (N.D. 1993).  The referee failed to make an explicit finding she did or did not accept Officer Goodman’s testimony as credible. 

[¶14] It is clear if the judicial referee would have found Officer Goodman’s testimony credible our precedent mandates the conclusion Officer Goodman validly stopped T.J.K.’s vehicle because he observed it weaving and heard its tires squeal.  
See, e.g.
, 
Glass
, 1998 ND App 1, ¶ 12, 581 N.W.2d 474; 
State v. Storbakken
, 552 N.W.2d 78, 80 (N.D. 1996); 
Zimmerman v. North Dakota Dep’t of Transp.
, 543 N.W.2d 479, 481-82 (N.D. 1996); 
Wolf v. North Dakota Dep’t of Transp.
, 523 N.W.2d 545, 547 (N.D. 1994); 
State v. Beyer
, 441 N.W.2d 919, 922-23 (N.D. 1989); 
State v. VandeHoven
, 388 N.W.2d 857, 859 (N.D. 1986); 
State v. Dorendorf
, 359 N.W.2d 115, 116-17 (N.D. 1984).  Without specific findings on credibility, we are unable to discern the basis for the decision to suppress. 

[¶15] This court will not ordinarily remand for clarification of findings of fact if we are able to discern the referee’s rationale through inference or deduction.  
See
 
Schmitz v. Schmitz
, 1998 ND 203, ¶ 6, 586 N.W.2d 490; 
Alvarez v. Carlson
, 524 N.W.2d 584, 591 (N.D.1994).  We may imply the necessary findings of fact if, after reviewing the record, we are able to clearly understand the judicial referee’s factual determinations.  
See, e.g.
, 
Schmitz
, at ¶ 6.  

[¶16] In this case, if there was only one plausible explanation for the judicial referee’s conclusion that Officer Goodman lacked a reasonable and articulable suspicion to validly stop T.J.K.’s vehicle, we would infer the referee’s findings on credibility from the record as a whole.  However, there are two plausible explanations for the referee’s decision: (1) the referee concluded Officer Goodman’s testimony was not credible; or (2) the referee misapplied the law and concluded Officer Goodman’s testimony, even if credible, was insufficient to establish he made a valid stop of T.J.K.’s vehicle as a matter of law.  
See, e.g.
, 
State v. Ova
, 539 N.W.2d 857, 859 (N.D. 1995) (reversing the trial court’s decision after concluding the court failed to apply the applicable legal standard despite its recitation of the standard).   This court will not speculate whether it is more likely the judicial referee found Officer Goodman’s testimony lacked credibility, or more likely the referee misapplied the law.  

[¶17] Each of the parties argued issues of fact and credibility to this court urging we hold for that party under a de novo review of the record.  We have stated, however, that where conflicting testimony is presented, our ability to examine a cold record is a poor substitute for the fact finder’s opportunity to observe the demeanor of the witnesses.  
Svedberg v. Stamness
, 525 N.W.2d 678, 682 (N.D. 1994) (citation omitted); 
Ludwig v. Burchill
, 481 N.W.2d 464, 469 (N.D. 1992).  

[¶18] We have further acknowledged the opportunity to observe the candor and demeanor of the witness is a significant reason for giving weight to the findings of the juvenile court.  
In the Interest of L.F. and J.F.
, 1998 ND 129, ¶ 12, 580 N.W.2d 573 (citation omitted).  Thus, even though not bound by the findings of the juvenile court, we are likely to defer to those findings because of the opportunity to observe the witnesses.  
In the Interest of J.L.D.
, 539 N.W.2d 73, 75 (N.D. 1995) (citation omitted).  

[¶19] We are mandated by N.D.C.C. § 27-20-56(1) to give appreciable weight to the findings of the juvenile court.  In this case, a finding on credibility is dispositive.  We do not have the benefit of a finding based upon direct observation of the witness and, therefore, are not able to give such a finding appreciable weight as required by statute.  In such circumstances, we find it prudent to remand this matter to the juvenile court for the necessary factual findings.  

III.  

[¶20] The order of the juvenile court is reversed and remanded with direction to the judicial referee to enter more explicit findings of fact.  We do not retain jurisdiction of this appeal after remand.

[¶21] Carol Ronning Kapsner

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.